John N. BOWERS and Alma S. Bowers, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 83–1082.

United States Court of Appeals, Fourth Circuit.

Submitted March 17, 1983.

Decided Aug. 31, 1983.

---

John N. Bowers and Alma S. Bowers, pro se.

Kenneth W. Gideon, Chief Counsel, Christina Burkholder, Chief Counsel, N. Jerold Cohen, Chief Counsel Internal Revenue Service; M. Carr Ferguson, Asst. Atty. Gen., Tax Division, Dept. of Justice, Washington, D.C., for appellee.

Before RUSSELL, Circuit Judge, and HAYNSWORTH and BUTZNER, Senior Circuit Judges.

PER CURIAM:

This case arose when the Commissioner of Internal Revenue disallowed a business bad debt deduction claimed by the taxpayer, Bowers. The Tax Court upheld the Commissioner's disallowance on the grounds that Bowers was not in the trade or business of lending money and he did not show the loan was proximately related to his trade or business. On appeal, we agreed the worthless loan could not be deducted as a business bad debt on either of these theories, but we remanded the case for consideration and findings with respect to the tax-payer's contention "that his sole or predominant motivation for the loan was to maintain the enhanced level of his income as an employee of the corporation resulting from the handling of the [relevant] transactions." *Bowers v. Commissioner,* 678 F.2d 509, 510 (4th Cir.1982). The Tax Court, on remand, concluded again that the deduction was not allowable because the taxpayer's "dominant motivation in making the loan was personal and not related to his position as an employee of John N. Bowers Realty, Inc., his business."

The taxpayer now appeals the Tax Court's most recent decision. We conclude the Tax Court clearly erred in its findings, and, accordingly, we reverse.

## I.

The taxpayer, at all times pertinent to this case, was president and sole shareholder of John N. Bowers Realty, Inc., which engaged in general real estate sales. He was also a real estate broker.

Bowers had no fixed salary or a certain commission on any sales he made or for which he was the listing agent. Rather, he drew from the corporation as compensation the lion's share of whatever profits were generated. Indeed, the taxpayer's records indicate that although corporate profits, before deduction of any compensation to taxpayer, from 1969 to 1975 totalled more than $187,000, the corporation in 1975 actually had some $3,000 *less* in retained, accumulated earnings than it had six years before. And of the $187,000 profit generated over the six year period, the taxpayer drew out for himself some $169,000 in compensation.[1]

George Basiliko was top executive officer and owner of G & B Real Estate. In March of 1972, he purchased all the stock of Crown Oil and Wax Co., Inc., and was appointed Chairman of the Board. In 1972, 1973 and 1974, John N. Bowers Realty, Inc. acted as

1. The taxpayer's records showed:

| Year Ended | Corporate Profit Before Appellant's Compensation | Appellant's Compensation | Accumulated Profit Retained In Corporation |
|---|---|---|---|
| 6/30/69 | $ 25,529 | $ 13,959 | $ 17,159 |
| 6/30/70 | $ 6,340 | $ 9,120 | $ 14,359 |
| 6/30/71 | 15,649 | 12,000 | 18,599 |
| 6/30/72 | 82,809 | 53,000 | 46,908 |
| 6/30/73 | 33,931 | 56,000 | 16,831 |
| 6/30/74 | 18,187 | 12,250 | 21,685 |
| 6/30/75 | 5,022 | 12,725 | 13,896 |
| | $187,467 | $169,054 | |

an agent in various real estate transactions for Basiliko, G & B, Crown Oil, or some combination of Basiliko's ventures. For the fiscal years 1972–74, John N. Bowers Realty, Inc. received some $77,000 in commissions from transactions involving Basiliko or Basiliko affiliates, out of a total of $395,000 in commissions. In 1972 and 1973, commissions traceable to Basiliko accounted for about $76,000 of the total of $275,000, or over 25%.

On May 30, 1972, seventeen days after Bowers received a $40,000 commission from the sale of seven properties to Basiliko, Basiliko asked Bowers for a $10,000 loan. Bowers personally made the loan to Basiliko as an individual, not to any of his business concerns. Bowers did not have his own corporation make the loan because it did not have sufficient monies to fund the loan at the time. The loan agreement contained no provision for interest. Basiliko never repaid the loan, and it became worthless in December of 1974.

## II.

The Tax Court, in considering Bowers' motivation for the loan, concluded that

> While the petitioner has shown by [this] evidence that both he and his corporation profited from dealings with Basiliko, he has not shown that these profits are in any way related to the loan at issue in this case. Petitioner has not shown the loan to be related to his enhanced income.

*Bowers v. Commissioner,* T.C.Memo. 1982–635 (1982).

Although there are detailed criteria for determination of the proper tax characterization of various financial transactions, they do not counsel disregard of common sense or financial realities. We cannot agree with the Tax Court that it is realistic to characterize this loan as unrelated to corporate profits and personal profits through enhanced income. The taxpayer's records showed:

| Fiscal Year | Total Commission Revenue | Basiliko Commission (*) | Profit Before Appellant's Compensation | Appellant's Compensation |
|---|---|---|---|---|
| 6/30/68 | $ 80,341 | $  -0- | $ 17,176 | $ 12,067 |
| 6/30/69 | 74,168 | -0- | 25,529 | 13,959 |
| 6/30/70 | 50,661 | -0- | 6,340 | 9,120 |
| 6/30/71 | 78,623 | -0- | 15,649 | 12,000 |
| 6/30/72 | 148,699 | 48,750 | 82,809 | 53,000 |
| 6/30/73 | 126,575 | 27,427 | 33,931 | 56,000 |
| 6/30/74 | 118,901 | 1,500 | 18,187 | 12,250 |
| 6/30/75 | 89,581 | -0- | 5,022 | 12,725 |
| Total | $77,677 | | $204,643 | $181,121 |

* Included as part of Col. 2

It is clear from the above and from what has been said before that commissions from Basiliko contributed significantly to the corporation's profits, especially in 1972 and 1973. It is further evident that profits generated in the corporation were passed through to Bowers individually. Over an eight year period when corporate profits totalled about $204,000, Bowers drew out for himself almost 90%, or $181,000. In 1972 and 1973, when the largest Basiliko commissions accrued to the company, the benefit inuring to Bowers each year by way of compensation was more than four times what he was able to take out of the company in 1971 or 1974.

Given the great benefits derived by the corporation and Bowers individually, from Basiliko's business, Basiliko's loan request undoubtedly was given careful consideration by Bowers with a view toward the possible consequences of denying the request. Particularly where Bowers had in hand sufficient funds to make the loan,

funds which derived from a Basiliko transaction and of which Basiliko very likely was aware, Bowers no doubt made the business decision that he thought the circumstances required, in order to protect future corporate profits and thus his own enhanced income. We think it would defy logic and business reality to conclude in these circumstances that the loan was not made by Bowers solely or predominantly to maintain the enhanced level of his income resulting from the handling of the Basiliko transactions.[2]

### III.

Accordingly, we reverse and remand for further proceedings.

REVERSED AND REMANDED.

---

**2.** We can find no suggestion in the record that there was some nonbusiness relationship between Basiliko and Bowers that might invite another characterization of the circumstances.